1  Kristin L. Holland (SBN 187314)
2  Tiffany J. Hofeldt (SBN 228864)
   **KATTEN MUCHIN ROSENMAN LLP**
3  2029 Century Park East, Suite 2600
   Los Angeles, CA 90067-3012
4  Telephone:  310.788.4400
   Facsimile:   310.788.4471

5  Floyd A. Mandell (SBN 1747681)
6  Cathay Y. N. Smith (SBN 6290784)
   **KATTEN MUCHIN ROSENMAN LLP**
7  525 W. Monroe Street
   Chicago, IL 60661-3693
8  Telephone:  312.902.5200
   Facsimile:   312.902.1061

9  Ira P. Rothken (SBN 160029)
   **ROTHKEN LAW FIRM LLP**
10 3 Hamilton Landing, Suite 280
   Novato, CA 94949-8271
11 Telephone:  415.924.4250
   Facsimile:   415.924.2905
12
13 Attorneys for Defendants

14             **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16             **WESTERN DIVISION (Los Angeles)**

17 ROXBURY ENTERTAINMENT, a          )   CASE NO. 2:08-cv-03872 FMC-JWJx
18 California corporation,            )
                                      )   **DEFENDANTS' OPPOSITION TO**
19          Plaintiff,                )   **PLAINTIFF'S MOTION TO**
                                      )   **DISMISS FIRST AMENDED**
20     vs.                            )   **COUNTERCLAIM AND STRIKE**
                                      )   **PORTIONS OF THE AMENDED**
21 PENTHOUSE MEDIA GROUP INC., a      )   **ANSWER AND AFFIRMATIVE**
22 Nevada corporation; PENTHOUSE      )   **DEFENSES**
   DIGITAL MEDIA PRODUCTIONS          )
23 INC., a New York corporation; PULSE)   HEARING DATE: April 13, 2009
24 DISTRIBUTION, LLC, a California    )   TIME:              10:00 a.m.
   LLC; and DOES 1-10, inclusive,     )   PLACE:             Courtroom 750
25                                    )
26          Defendants.               )
27 _____   )
                                      )
28 AND RELATED COUNTERCLAIM.          )
   _____   )

31475773_214143-00028                    1                    2:08-cv-03872 FMC-JWJx

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................7

II.     FACTUAL AND PROCEDURAL BACKGROUND .........................................7

III.    LEGAL STANDARDS ...................................................................................9

        A.      Federal Rule of Civil Procedure 12(b)(6) ..........................................9

        B.      Federal Rule of Civil Procedure 12(f)................................................10

IV.     ARGUMENT................................................................................................11

        A.      The Allegations Of The First, Second And Third Counterclaims
                (The  "Cancellation Counterclaims") Are Sufficient To Confer
                Standing..........................................................................................11

        B.      Defendants Have Stated A Claim For Relief Under Section 38 Of
                The  Lanham Act In Their Fourth Amended Counterclaim...................16

        C.      The Allegations Of Defendants' Fifth And Sixth Counterclaims
                (the "Unfair Competition Counterclaims") State A Claim And Are
                Sufficient To Confer Standing. ......................................................21

        D.      Defendants' Seventh And Eleventh Affirmative Defenses Provide
                Plaintiff With Notice Of The Defenses And Should Not Be
                Stricken..........................................................................................23

V.      CONCLUSION............................................................................................25

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1

# TABLE OF AUTHORITIES

2

3   **FEDERAL CASES**

4   *Abercrombie & Fitch Co. v. Hunting World, Inc.,*
5       537 F.2d 4 (2d Cir. 1976) ...................................................................12

6   *Academy Award Productions, Inc. v. Bulova Watch Co.,*
7       129 F. Supp. 780 (S.D.N.Y. 1955), *aff'd,* 233 F.2d 449 (2d Cir. 1956) ............20

8   *Atlas Supply Co. v. Atlas Brake Shops, Inc,*
        360 F.2d 16 (6th Cir. 1966) ...............................................................23

9   *Bell Atl. Corp. v. Twombly,*
10      550 U.S. 544 (2007)...........................................................................10

11  *Blockbuster Videos, Inc. v. City of Tempe,*
12      141 F.3d 1295 (9th Cir. 1998) ...........................................................21

13  *Broadcom Corp. v. Qualcomm Inc.,*
14      No. 08-CV-1607, 2009 WL 650576 (S.D. Cal. Mar. 11, 2009)........................10

15  *Cosmetically Yours, Inc. v. Clairol Inc.,*
16      424 F.2d 1385 (C.C.P.A. 1970) .........................................................23

17  *Cummins Engine Co. v. Continental Motors Corp.,*
18      359 F.2d 892 (C.C.P.A. 1966) ...........................................................12

19  *Dunn Computer Corp. v. Loudcloud, Inc.,*
        133 F. Supp. 823 (E.D. Va. 2001) ......................................................23

20  *Fantasy, Inc. v. Fogerty,*
21      984 F.2d 1524 (9th Cir. 1993), *overruled on other grounds,* 510 U.S. 517
22      (1994)..............................................................................................10

23  *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.,*
24      989 F.2d 985 (8th Cir. 1993) ........................................................18-20

25  *Gillette Co. v. "42" Prods. Ltd.,*
        396 F.2d 1001 (C.C.P.A. 1968).........................................................23

26  *Hall v. City of Santa Barbara,*
27      833 F.2d 1270 (9th Cir. 1986) ...........................................................10

28

*Henry v. Chapa,*
   No. 07-C-336, 2009 WL 462706 (E.D. Cal. Feb. 23, 2009) .............................10

*Hot Stuff Foods, LLC v. Mean Gene's Enter., Inc.,*
   468 F. Supp. 2d 1078 (D.S.D. 2006) .................................................................12

*Jones v. Del Taco, Inc.,*
   No. 04-C-175, 2005 WL 3477934 (C.D. Cal. Jul. 11, 2005) ...........................10

*Landstrom v. Thorpe,*
   189 F.2d 46 (8th Cir. 1951) ..............................................................................17

*Lipton Indus. Inc. v. Ralston Purina Co.,*
   670 F.2d 1024 (C.C.P.A. 1982)......................................................................11-13

*Merry Hull & Co. v. Hi-Line Co.,*
   243 F. Supp. 45 (S.D.N.Y. 1965) ......................................................................20

*Multimedia Patent Trust v. Microsoft Corp.,*
   525 F. Supp. 2d 1200 (S.D. Cal. 2007).............................................................10

*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001) ..............................................................................9

*Official Airline Guides, Inc. v. Goss,*
   6 F.3d 1385 (9th Cir. 1993) .........................................................................16, 17

*Plastilite Corp. v. Kassnar Imports,*
   508 F.2d 824 (C.C.P.A. 1975).............................................................................15

*Procter & Gamble Co. v. Johnson & Johnson Inc.,*
   485 F. Supp. 1185 (S.D.N.Y. 1979) ..................................................................13

*So. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Assoc.,*
   426 F. Supp. 2d 1061 (C.D. Cal. 2005)..............................................................22

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC,*
   No. 07-C-554, 2007 WL 3231724 (N.D. Cal. Oct. 30, 2007)...........................10

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,*
   735 F.2d 346 (9th Cir. 1984) ........................................................................12, 15

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002)..............................................................................................9

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*Symantec Corp. v. CD Micro, Inc.*,
  No. 02-406, 2002 WL 31112178 (D. Or. Sept. 17, 2002)....................................13

*Woodfield v. Bowman*,
  193 F.3d 354 (5th Cir. 1999) ..........................................................................24

*Wyshak v. City Nat'l Bank*,
  607 F.2d 824 (9th Cir. 1979) ....................................................................10, 24

*Yee v. City of Escondido*,
  503 U.S. 519 (1992)........................................................................................10

**REGULATORY CASES**

*Kelly Servs., Inc. v. Greene's Temporaries, Inc.*,
  25 U.S.P.Q.2d 1460 (T.T.A.B. 1992) ..............................................................10

*Tonka Corp. v. Tonka Tools, Inc.*,
  229 U.S.P.Q. 857 (T.T.A.B. 1986)...................................................................10

*Yard-Man, Inc. v. Getz Exterminators, Inc.*,
  157 U.S.P.Q. 100 (T.T.A.B. 1968) ..................................................................11

**FEDERAL STATUTES**

15 U.S.C.A. § 1120 ..................................................................................16, 20

15 U.S.C.
  § 1064......................................................................................................11
  § 1119......................................................................................................11

**STATE STATUTES**

California Business and Professions Code
  Sections 17200, et seq.................................................................................21

**RULES**

Federal Rules of Civil Procedure
  Rule 8 .......................................................................................................24
  Rule 8(a)(2) .................................................................................................9
  Rule 8(c).....................................................................................................23
  Rule 12(b)(6)....................................................................................9, 10, 25

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Rule 12(f) ..........................................................................................................10, 25
Rule 15(a)(2) .............................................................................................................25

**TREATISES**

3 McCarthy on Trademarks and Unfair Competition
      § 20-46 (4th ed. 2004) ........................................................................................12

6 McCarthy on Trademarks and Unfair Competition
      § 31:85 (8th ed. 2008) .........................................................................................17

31475773_214143-00028                                                   2:08-cv-03872 FMC-JWJx

1  Defendants Penthouse Media Group Inc., n/k/a FriendFinder Networks Inc.,
2  Penthouse Digital Media Productions Inc. and Pulse Distribution, LLC (collectively,
3  "Defendants"), by their attorneys and for their Response in Opposition to the Motion
4  to Dismiss Defendants' First Amended Counterclaim and Strike Portions of the
5  Amended Answer filed by plaintiff Roxbury Entertainment ("Plaintiff"), state as
6  follows:

7  **I.    INTRODUCTION**

8  Plaintiff has moved to dismiss all six claims for relief asserted by Defendants in
9  Defendants' First Amended Counterclaim (the "Amended Counterclaim"), and
10 Plaintiff has moved to strike two of the eleven affirmative defenses – namely, unclean
11 hands and abandonment – asserted by Defendants in their Amended Answer and
12 Affirmative Defenses (the "Amended Answer").  Plaintiff's motion (the "Motion"),
13 however, is fundamentally flawed for numerous reasons, including but not limited to
14 the fact that the relief Plaintiff seeks would require this Court to apply standards
15 reserved for motions for summary judgment, not motions to dismiss or strike.  In
16 addition, the Motion advances strained interpretations of the law and mischaracterizes
17 or altogether ignores Defendants' allegations in the Amended Counterclaim and
18 Amended Answer. As set forth more fully within this response, the Motion should be
19 denied in its entirety.

20 **II.   FACTUAL AND PROCEDURAL BACKGROUND**

21 In or about April 2008, Defendants began marketing and selling an adult
22 entertainment film titled "*Penthouse: Route 66*" (the "Film").  Amended Counterclaim
23 at ¶ 7.   Defendants invested considerable time and financial resources in the
24 production, promotion, and distribution of the Film.  *Id.*  In or about May 2008,
25 Plaintiff demanded that Defendants cease and desist the promotion and distribution of
26 the Film.   Complaint at ¶ 11.  Plaintiff claimed to be the owner of three U.S.
27 trademark registrations (collectively, the "Registrations") in the United States Patent
28 and Trademark Office (the "USPTO") for the mark ROUTE 66 for entertainment

1   products, namely, Registration No. 3,189,543 issued on December 26, 2006, for "pre-
2   recorded DVD's and videocassettes featuring drama, action and adventure,"
3   Registration No. 3,194,255 issued on January 2, 2007, for "entertainment services,
4   namely, entertainment in the nature of an on-going television program in the field of
5   drama, action and adventure; television production services," and Registration No.
6   3,291,736 issued on September 11, 2007, for "motion picture film series featuring
7   drama, action and adventure." *Id*. at ¶¶ 7-9.

8       Even though Defendants' use of *Penthouse: Route 66* as the title of their Film
9   was lawful, to avoid litigation, and in response to Plaintiff's claims, Defendants
10  ceased all sales and promotional efforts of the Film in the United States and contacted
11  their distributors to cease distributing the Film. Amended Counterclaim at ¶ 12. In so
12  doing, Defendants gave up revenue from lost future sales of the Film, including from
13  potential sequels and licensing rights, resulting in the loss of not only Defendants'
14  anticipated profits, but also in the loss of Defendants' ability to recoup even their
15  expenses incurred in producing, promoting and distributing the Film. *Id*.

16      Despite Defendants' accommodation of Plaintiff's concerns, Plaintiff
17  nevertheless sued Defendants in this Court claiming, among other things, that
18  Defendants infringed and diluted Plaintiff's trademark rights arising under federal law
19  in the mark ROUTE 66, given the existence of the Registrations, as well as Plaintiff's
20  common law rights in the mark. *See* Complaint at ¶¶ 34-50. During Defendants'
21  investigation of Plaintiff's claims, Defendants discovered evidence that Plaintiff had
22  submitted false statements to the USPTO in obtaining the Registrations. *See*
23  Amended Counterclaim at ¶¶ 16-42; Amended Answer, pp. 26-27. Defendants'
24  investigation further revealed that, to the extent that Plaintiff and/or its predecessors-
25  in-interest ever had any rights in the ROUTE 66 mark, Plaintiff subsequently
26  abandoned those rights. *See* Amended Counterclaim at ¶ 27; Amended Answer, p. 27.
27  Plaintiff's false statements and abandonment not only warrant cancellation of the
28  Registrations, but also bear upon Plaintiff's alleged entitlement to use and exclude

1   others from using in commerce as a trademark "Route 66" (which, in any event,
2   Defendants did not do).  Accordingly, Defendant PMGI filed a petition in the USPTO
3   to cancel the Registrations on the grounds of Plaintiff's fraud on the USPTO and
4   abandonment (the "Cancellation Proceeding").   Plaintiff moved to suspend the
5   Cancellation Proceeding in the USPTO, but stipulated to having the cancellation
6   claims heard in this Court as part of the instant litigation.  Despite this stipulation,
7   Plaintiff now moves to dismiss Defendants' claims on the bases that Defendants
8   allegedly do not have standing to cancel the Registrations and/or that Defendants'
9   counterclaims and affirmative defenses do not state a claim.

10   Plaintiff's actions have injured Defendants and have resulted in damages,
11   including, without limitation, cessation of Defendants' sales, promotion and
12   distribution of the Film, Defendants' loss of revenue from sequels of, and licensing
13   rights in, the Film, and Defendants' inability to recoup their expenses incurred in the
14   production, promotion and distribution of the Film.   Defendants have also incurred
15   considerable   expenses   and   consumed   considerable   resources,   including   time,
16   attorneys' fees and costs, in defending against Plaintiff's baseless claims.

17   **III.   LEGAL STANDARDS**
18   **A.   Federal Rule of Civil Procedure 12(b)(6)**
19   Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading
20   that states a claim for relief must contain . . . . a short and plain statement of the claim
21   showing that the pleader is entitled to relief . . . ."  The "short and plain statement"
22   required by Rule 8(a)(2) "must simply give the defendant fair notice of what the
23   plaintiff's claim is and the grounds upon which it rests."   *Swierkiewicz v. Sorema*
24   *N.A.*, 534 U.S. 506, 512 (2002) (internal quotation marks omitted).

25   In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of
26   Civil Procedure, a court must draw all reasonable inferences that favor the plaintiff,
27   construe the allegations of the complaint in the light most favorable to the plaintiff and
28   accept as true all well-pleaded facts and allegations in the complaint.  *See Navarro v.*

1  *Block*, 250 F.3d 729, 732 (9th Cir. 2001) (affirming denial of motion to dismiss);

2  *Jones v. Del Taco, Inc.*, No. 04-C-175, 2005 WL 3477934, at *1 (C.D. Cal. Jul. 11,

3  2005).  Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate

4  only where the plaintiff has alleged facts that do not "raise a right to relief above the

5  speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965

6  (2007); *see also Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200,

7  1212 (S.D. Cal. 2007) (denying all motions to dismiss).  "The motion to dismiss for

8  failure to state a claim is viewed with disfavor and is rarely granted." *Hall v. City of*

9  *Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986), *abrogated by Yee v. City of*

10  *Escondido*, 503 U.S. 519 (1992); *see also Sonoma Foods, Inc. v. Sonoma Cheese*

11  *Factory, LLC*, No. 07-C-554, 2007 WL 3231724, at *2 (N.D. Cal. Oct. 30, 2007)

12  (denying motion to dismiss).

**B.  Federal Rule of Civil Procedure 12(f)**

14        Motions to strike pleadings are disfavored and "are generally not granted unless

15  it is clear that the matter to be stricken could have no possible bearing on the subject

16  matter of the litigation." *Broadcom Corp. v. Qualcomm Inc.*, No. 08-CV-1607, 2009

17  WL 650576, at *11 (S.D. Cal. Mar. 11, 2009); *see also Henry v. Chapa*, No. 07-C-

18  336, 2009 WL 462706, at *1 (E.D. Cal. Feb. 23, 2009) (noting that "motions to strike

19  are viewed negatively because of the limited import of the pleadings under the Federal

20  Rules").  "The key to determining the sufficiency of pleading an affirmative defense is

21  whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607

22  F.2d 824, 827 (9th Cir. 1979).  Ultimately, whether to grant a motion to strike lies

23  within the sound discretion of the district court. *See Fantasy, Inc. v. Fogerty*, 984

24  F.2d 1524, 1527 (9th Cir. 1993), *overruled on other grounds*, 510 U.S. 517 (1994).

25  However, in exercising its discretion, "the court views the pleadings in the light most

26  favorable to the non-moving party and resolves any doubt as to the relevance of the

27  challenged allegations or sufficiency of a defense in the [non-movant's] favor."

28  *Broadcom Corp.*, 2009 WL 650576, at *11 (citation omitted).

## IV.   ARGUMENT

Although Plaintiff's Motion is stylized as one to dismiss or strike, Plaintiff ignores Defendants' allegations of damage and pecuniary injury asserted in the Amended Counterclaim – allegations that are sufficient to withstand a motion to dismiss – and instead argues only that Defendants have not sustained damages sufficient to support any of their six counterclaims comprising the Amended Counterclaim. *See* Motion at pp. 6-14. Such argument is inappropriate in the context of a motion to dismiss, however, because whether or not Defendants have, in fact, sustained damages is a question of *fact*, not one of *pleading*.

Plaintiff then allows this improper standard to infect its attack on Defendants' affirmative defenses of unclean hands and abandonment, since Plaintiff argues that these defenses must also be stricken for the same reason. *See id*. at pp. 16-17. When analyzed under the proper legal standards, Defendants have properly pled their counterclaims and their affirmative defenses of unclean hands and abandonment, such that the Motion must be denied.

### A.   The Allegations Of The First, Second And Third Counterclaims (The "Cancellation Counterclaims") Are Sufficient To Confer Standing.

To withstand a motion to dismiss, a party seeking to cancel a federal trademark registration need only allege such facts as would, if proved, establish: (1) standing to maintain the proceeding, and (2) that a valid ground exists for cancelling the subject registration. *See Lipton Indus. Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1026 (C.C.P.A. 1982). Plaintiff does not contest the sufficiency of Defendants' allegations that a valid ground exists for cancelling the Registrations, but disputes only the sufficiency of Defendants' standing allegations.

Section 14 of the Lanham Act, 15 U.S.C. § 1064, allows "any person who believes that he is or will be damaged . . . by the registration of a mark" to petition to cancel a trademark registration. Similarly, Section 37 of the Lanham Act, 15 U.S.C. § 1119, provides that "[i]n any action involving a registered mark the court may . . .

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   order the cancellation of registrations, in whole or in part . . . ."   Over time, the

2   standing requirement relating to cancelling a federal trademark registration has been

3   relaxed.   *See* 3 *McCarthy on Trademarks and Unfair Competition* § 20-46 (4th ed.

4   2004) ("As the requirements for standing to oppose [registered marks] have been

5   liberalized, so also the criteria for standing to cancel have become less strict."); *Hot*

6   *Stuff Foods, LLC v. Mean Gene's Enter., Inc.*, 468 F. Supp. 2d 1078, 1090 (D.S.D.

7   2006) (characterizing the rules for standing to seek cancellation of a federal trademark

8   registration as "liberal").   Such requirements have been relaxed because "the public

9   interest is served . . . in broadly interpreting the class of persons Congress intended to

10  be allowed to institute cancellation proceedings." *Lipton Indus.*, 670 F.2d at 1030.

11      *Lipton*, the seminal case on standing in the cancellation context, recognizes that

12  "[n]o absolute test can be laid down for what must be proved to establish standing as a

13  petitioner in a cancellation proceeding . . . ."   *Id.*   Instead, all that is required to

14  establish standing is for a party to "demonstrate a real interest in the proceeding" or,

15  stated another way, for the party to show that it is "more than an intermeddler" in the

16  proceeding. *Id.* at 1028-29.  "The purpose in requiring standing is to prevent litigation

17  where there is no real controversy between the parties . . . ."   *Id.*   Neither ownership of

18  a trademark, nor use of a similar term as a trademark, by the party seeking

19  cancellation is required to establish standing.   *See Abercrombie & Fitch Co. v.*

20  *Hunting World, Inc.*, 537 F.2d 4, 13 n.13 (2d Cir. 1976); *Cummins Engine Co. v.*

21  *Continental Motors Corp.*, 359 F.2d 892, 895 (C.C.P.A. 1966) (finding standing

22  despite the fact that "appellee was not using the term as a trademark nor did it

23  contemplate doing so. . . .").   Likewise, for a person to have standing to cancel a

24  registered mark, he need not plead or prove actual damages. *See Star-Kist Foods, Inc.*

25  *v. P.J. Rhodes & Co.*, 735 F.2d 346, 348-49 (9th Cir. 1984) ("Proof of actual damage

26  is only relevant, not requisite, to establishing standing . . . . [T]here is no requirement

27  that damage be proved in order to establish standing.").

28

1   By virtue of Plaintiff's filing the instant lawsuit based, in part, on the
2   Registrations, by virtue of Defendants' production, promotion and sales of its Film,
3   and by virtue of Plaintiff's demand that Defendants cease and desist all promotions
4   and sales of its Film, it is apparent that Defendants have a real interest in the outcome
5   of their counterclaims for cancellation of the Registrations that render Defendants far
6   more than mere "intermeddlers" as characterized in *Lipton*.    Indeed, because
7   Plaintiff's actions have placed the Registrations at issue in this case, Defendants have
8   standing to challenge the Registrations. *See Symantec Corp. v. CD Micro, Inc.*, No.
9   02-406, 2002 WL 31112178, at *4 (D. Or. Sept. 17, 2002) (denying plaintiff's motion
10  to dismiss defendant's counterclaim for cancellation of plaintiff's trademarks and
11  copyrights for lack of standing because "[defendant] has an actual and ongoing
12  dispute with [plaintiff] which is based on the copyrights and trademarks and led to this
13  action."); *Procter & Gamble Co. v. Johnson & Johnson Inc.*, 485 F. Supp. 1185,
14  1211-12 (S.D.N.Y. 1979) ("When [defendant] was forced to defend this action, it
15  sustained damage and was put in fear of further damage sufficient to justify its plea
16  for cancellation."); *Kelly Servs., Inc. v. Greene's Temporaries, Inc.*, 25 U.S.P.Q.2d
17  1460, 1461-62 (T.T.A.B. 1992) (finding "petitioner's real interest in the proceeding,
18  that is, an interest beyond that of the general public" where petitioner utilized a design
19  similar to the registered mark and where respondent previously filed an infringement
20  suit against petitioner and again threatened litigation against petitioner for its use of
21  the similar design); *Tonka Corp. v. Tonka Tools, Inc.*, 229 U.S.P.Q. 857, 858-59
22  (T.T.A.B. 1986) (finding standing where the registration sought to be cancelled was
23  "raised and relied on" by respondent in litigation against petitioner and "[t]hat being
24  the case, we find petitioner to be more than a 'mere intermeddler' in the current
25  cancellation proceeding.   Petitioner has a real interest in seeking to cancel a
26  registration that has been asserted, even defensively, against it in a civil action in the
27  U.S. District Court.").
28

1   If Plaintiff were to prevail in this lawsuit, Defendants could potentially be
2   enjoined from using the merely descriptive phrase "Route 66" and could have to pay
3   damages, profits and attorneys' fees to Plaintiff based on Defendants' past use of that
4   descriptive phrase. *See* Complaint at ¶¶ 37, 41-43, 48-50.  Furthermore, Defendants
5   have incurred considerable expenses and consumed considerable resources, including
6   time, attorneys' fees and costs, in connection with this litigation.  *See* Amended
7   Counterclaim, ¶¶ 14-15.  Thus, Defendants have alleged a real, immediate and serious
8   interest in cancellation of the Registrations, sufficient to confer standing.

9   In making its argument to the contrary, Plaintiff relies upon outdated case law
10  that is contradicted by the more recent case law cited above, and Plaintiff misquotes
11  certain of its authority in an attempt to strengthen its weak position.  For example,
12  Plaintiff "quotes" the case of *Yard-Man, Inc. v. Getz Exterminators, Inc.*, 157
13  U.S.P.Q. 100, 105 (T.T.A.B. 1968), in bold and italics as saying that "[i]t is well
14  settled, however, that the mere threat of a suit for infringement <u>or the actual filing of</u>
15  <u>such suit</u> does not, per se, constitute damage within the meaning of [the Lanham
16  Act]."  Motion at pp. 10-11 (emphasis added).  What *Yard-Man* really says, however,
17  is that "[i]t is well settled, however, that the mere threat of a suit for infringement
18  <u>and/or the filing and litigation of an opposition proceeding</u> does not, per se, constitute
19  damage within the meaning of [the Lanham Act]."  *Yard-Man*, 157 U.S.P.Q. at 105
20  (emphasis added).  Thus, *Yard-Man* does not stand for the proposition advanced by
21  Plaintiff, and, in fact, it has no bearing on this case where, as here, an infringement
22  suit was actually filed (i.e., as opposed to merely threatened) or where, again as here,
23  said suit is in federal district court (i.e., as opposed to a proceeding occurring only in
24  the USPTO, which has no power to enjoin activity or award damages for claimed
25  infringement).  In light of the foregoing, Plaintiff's assertion of the Registrations in
26  this litigation against Defendants readily gives Defendants standing to seek
27  cancellation of those Registrations.

28

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    Should the Court agree with Plaintiff, however, and hold that the institution of
2    this litigation against Defendants is insufficient to raise Defendants beyond the status
3    of "mere intermeddlers," Defendants have sufficiently alleged likelihood of damage,
4    and, although not required, actual damage, which solidifies their right to maintain the
5    Cancellation Counterclaims. Specifically, Defendants have pled, in detail, the damage
6    resulting to them from the cessation of their sales, promotion and distribution of the
7    Film, their loss of revenue from sequels of, and licensing rights in, the Film, their
8    inability to recoup their expenses incurred in the production, promotion and
9    distribution of the Film, and their attorneys' fees and costs in defending against
10   Plaintiff's baseless claims. *See* Amended Counterclaim at ¶¶ 12-15. Allegations of
11   financial impact such as this are sufficient to confer standing. *See, e.g., Plastilite*
12   *Corp. v. Kassnar Imports*, 508 F.2d 824, 826 (C.C.P.A. 1975) (finding that appellee
13   had standing to seek cancellation of appellant's trademark registration because of
14   appellee's imported products being destroyed and/or deterred from importation due to
15   appellee's alleged trademark infringement).

16   Plaintiff's argument to the contrary centers on the fact that Defendants do not
17   utilize the merely descriptive term "Route 66" as a trademark and Plaintiff's assertion
18   that Defendants have not alleged damage to, or a pecuniary interest in, "their own
19   mark." Motion at pp. 7-8. However, and as explained, *supra*, at p. 8, neither
20   ownership of a trademark, nor use of a similar term as a trademark, is a prerequisite to
21   having standing to seek cancellation of a trademark registration. Furthermore, there is
22   no question that Defendants have alleged damage resulting from, and a pecuniary
23   interest in, their use of the merely descriptive phrase "Route 66." As detailed in the
24   Amended Counterclaim, this phrase forms part of the title of Defendants' Film
25   underlying the claims in this litigation. *See* Amended Counterclaim at ¶¶ 7, 11-13.
26   Thus, as the Ninth Circuit found in *Star-Kist Foods*, Defendants' "sales and
27   promotion efforts under the mark. . . . represent a pecuniary interest in the mark."
28   *Star-Kist Foods*, 735 F.2d at 350. Defendants have properly pled facts sufficient to

Katten
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1   demonstrate standing for purposes of the Cancellation Counterclaims such that the

2   Motion should be denied insofar as it relates to such counterclaims.

3   **B.      Defendants Have Stated A Claim For Relief Under Section 38 Of The**

4   **Lanham Act In Their Fourth Amended Counterclaim.**

5          Plaintiff asserts that Defendants "have failed to allege a cognizable Lanham Act

6   injury for standing to assert a claim attacking [the Registrations] and alleging false or

7   fraudulent representations to the USPTO." Motion at p. 13.  Assuming that Plaintiff's

8   point is that Defendants' allegations in the Amended Counterclaim fail to state a cause

9   of action under Section 38, Plaintiff's argument has no merit.

10         Section 38 of the Lanham Act ("Section 38"), states:

11
12              Any person who shall procure registration in the Patent and
                Trademark Office of a mark by a false or fraudulent declaration or
13              representation, oral or in writing, or by any false means, shall be
14              liable in civil action by any person injured thereby for any
                damages sustained in consequence thereof.
15   15 U.S.C.A. § 1120.

16         Section 38 creates civil liability for damages for false or fraudulent trademark

17   registration.  *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1395 (9th Cir.

18   1993).  Despite the clear language of the statute, Plaintiff nevertheless erroneously

19   contends that Defendants must "allege the requisite injury to *their own mark*" to have

20   standing to sue for damages.  Motion at p. 13 (emphasis in original).  Nowhere does

21   Section 38 require injury to a party's own mark before it may bring civil action under

22   the statute.  To the contrary, Section 38 explicitly states that "***any*** person injured

23   thereby" may bring civil action "for ***any*** damages sustained in consequence thereof."

24   15 U.S.C. § 1120 (emphasis added).  There is not even a requirement that the party

25   bringing civil action own ***any*** trademark to bring action under Section 38 to recover

26   damages, as Plaintiff erroneously argues in its Motion.

27         Indeed, the Ninth Circuit has stated in *Official Airline Guides* that "[a]ny person

28   who has a reasonable interest to be protected against the use of fraudulent statements

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   in procuring a trademark registration—such as one who attempts to sell, market,
2   license, or commercially exploit any product with the same name as the fraudulently
3   procured trademark—may maintain a suit under Section 38. [] Standing is not limited
4   . . . to those who are forced to defend trademark infringement actions." *Official*
5   *Airline Guides*, 6 F.3d at 1396 (internal citation omitted).

6        In their Amended Counterclaim, Defendants allege with specificity that
7   Plaintiff fraudulently procured the Registrations. *See* Amended Counterclaim at ¶¶
8   17–42. Defendants further allege that they sold, marketed, and distributed the Film
9   under a title comprised, in part, of the merely descriptive element "Route 66," which
10   element is the same term as the claimed mark that is the subject of the Registrations.
11   *See id.* at ¶ 7. According to the Ninth Circuit, these allegations are sufficient to allow
12   Defendants to maintain their counterclaim under Section 38 because Defendants have
13   alleged the existence of a reasonable interest to be protected from Plaintiff's use of its
14   fraudulently procured Registrations. *See Official Airline Guides*, 6 F.3d at 1396.

15        A trademark registrant is liable in a civil action in the federal court for damages
16   resulting from the use of the mark while falsely registered, and not an injury resulting
17   from the false declaration solely. *Landstrom v. Thorpe*, 189 F.2d 46, 50 (8th Cir.
18   1951). In other words, if a federal trademark registrant takes substantial affirmative
19   action to enforce its false registration, it becomes liable for any consequential
20   damages. *See also 6 McCarthy on Trademarks and Unfair Competition* § 31:85 (8th
21   Ed. 2008) ("If a defendant sued for infringement of a federally registered mark
22   believes that the registration was procured by fraud, it may raise a § 38 claim as a
23   counterclaim."). Defendants' Amended Counterclaim sufficiently alleges that, as a
24   consequence of Plaintiff's substantial affirmative action to enforce its fraudulently
25   obtained Registrations, Defendants ceased all sales and promotional efforts of the
26   Film in the United States and contacted their distributors to cease distributing the
27   Film. *See* Amended Counterclaim at ¶ 12. Furthermore, as alleged in their Amended
28   Counterclaim, Defendants gave up revenue from lost future sales of the Film,

1    including from potential sequels and licensing rights, resulting in the loss of not only
2    Defendants' anticipated profits, but also in the loss of Defendants' ability to recoup
3    even their expenses incurred in producing, promoting and distributing the Film. *See*
4    *id*. Defendants have also incurred considerable expenses and consumed considerable
5    resources, including time, attorneys' fees and costs, in defending against Plaintiff's
6    baseless claims based on its fraudulently procured Registrations. *See id*. at ¶¶ 14–15.
7    Indeed, Section 38 was implemented to provide parties such as Defendants with a
8    remedy for these injuries and damages resulting from Plaintiff's wrongful
9    enforcement of its fraudulently procured Registrations.

10        Plaintiff's reliance on *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*,
11   989 F.2d 985 (8th Cir. 1993), for the proposition that Defendants have failed to allege
12   injury, reliance, or damages under Section 38 is misplaced. *See* Motion at pp. 13-14.
13   As a preliminary matter, the plaintiff's trademark in *Gilbert/Robinson* had been
14   registered in the USPTO for over 17 years, unlike here, where Plaintiff's fraudulently
15   procured Registrations were issued less than three years ago. *See Gilbert/Robinson*,
16   989 F.2d at 988 (trademark registrations issued in 1976, case decided in 1993); *see*
17   *also* Complaint at ¶¶ 7-9 (Plaintiff's trademark registrations issued in 2006, 2007 and
18   2007). As such, and unlike the defendant in *Gilbert/Robinson*, Defendants in this case
19   were immediately injured at the time that Plaintiff's fraudulent Registrations were
20   issued because Defendants were in existence and doing business at that time. *See*
21   *Gilbert/Robinson*, 989 F.2d at 990 ("[The defendant] did not exist in 1976, when the
22   fraud occurred, so it was not immediately injured by the fact that [the plaintiff's] mark
23   was registered.").

24        Furthermore, the court in *Gilbert/Robinson* found that the defendant had failed
25   to establish that relief was warranted under Section 38 because, unlike here, the court
26   had already determined the existence of a valid trademark, independent of the
27   plaintiff's federal trademark registrations or the alleged fraud, thereby destroying the
28   causal link to the defendant's Section 38 counterclaim. *See Gilbert/Robinson*, 989

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    F.2d at 989.  Explaining that the defendant failed to prove that its injury was caused

2    by plaintiff's registration of the marks, the court stated:

> [E]ven without its registrations, [the plaintiff] still would have
> had a substantially similar Lanham Act cause of action and an
> identical state law claim for infringement and unfair
> competition. . . .  Since [the plaintiff's] registration, even if
> fraudulently procured, was consistent with and did not disturb
> its underlying trademark rights acquired through thirteen years
> of use of the mark in commerce, [defendant's] injury—its
> exposure to infringement litigation and liability—was not "in
> consequence of" Gilbert's fraudulent declaration to the PTO in
> 1976.

*Id* at 991-92.

11        Significantly, and distinctive from *Gilbert/Robinson*, Plaintiff in this case would

12   have no exclusive right to use its alleged mark "ROUTE 66" as a trademark without

13   its Registrations.  For instance, the Amended Counterclaim alleges that Plaintiff did

14   not use the alleged ROUTE 66 mark for a series of motion pictures as of the date of

15   Plaintiff's claimed date of first use.  *See* Amended Counterclaim at ¶¶ 36–41.

16   Defendants further allege that Plaintiff has never produced a series of motion pictures

17   under the alleged ROUTE 66 mark, and, therefore, Plaintiff has never used the alleged

18   ROUTE 66 mark in commerce for a motion picture series.  *Id.*  Furthermore, because

19   Plaintiff's marks are not inherently distinctive, and are based solely on a 1960s use

20   that has been long forgotten by most of the population, Plaintiff would have no valid

21   infringement claim without its Registrations.  Accordingly, if the Court accepts the

22   allegations in Defendants' Amended Counterclaim as true, as is the standard

23   applicable to the Motion, then Plaintiff, unlike the plaintiff in *Gilbert/Robinson*, could

24   have no right to exclude third-party uses of the alleged ROUTE 66 mark either under

25   the Lanham Act or the common law, and Plaintiff could not bring against Defendants

26   a substantially similar Lanham Act cause of action or an identical state law claim

27   against for infringement and unfair competition.

28

Moreover, the court in *Gilbert/Robinson* stated that, "[t]o recover for this type of injury under § 1120, an infringer must prove that the registration holder has no right to exclusive use of the mark allegedly infringed, in addition to proving that the registration was fraudulently procured." *Gilbert/Robinson*, 989 F.2d at 992 (earlier defining "injury" to mean the defendant's "exposure to infringement litigation and liability"). As discussed above, the allegations in the Amended Counterclaim, if true, would show that Plaintiff has no right to exclusive use of the alleged ROUTE 66 mark and that Plaintiff's Registrations for the alleged ROUTE 66 mark were fraudulently procured. Accordingly, contrary to the Motion, Defendants have stated a cause of action under Section 38 for injuries to Defendants' rights to sell, market, license, and commercially exploit the Film, and from injuries and damages resulting from exposure to infringement litigation and liability.

Finally, Defendants' injuries and damages resulting from exposure to infringement litigation and liability, such as their attorneys' fees and costs in defending against Plaintiff's baseless claims of infringement of Plaintiff's fraudulently procured Registrations, constitute damages sustained in consequence of such Registrations and are recoverable under Section 38. *See Merry Hull & Co. v. Hi-Line Co.*, 243 F. Supp. 45 (S.D.N.Y. 1965) ("Such damages [under Section 38] would include but not be limited to counsel fees incurred in defending the suits brought by plaintiff, and prosecution of the counterclaims seeking declarations of invalidity and cancellation of the trademark . . . ."); *Academy Award Productions, Inc. v. Bulova Watch Co.*, 129 F. Supp. 780, 784 (S.D.N.Y. 1955) ("The fact that the damages Bulova suffered consisted of the attorneys' fees and disbursements entailed in defense against this attack does not make them any less 'damages sustained in consequence' of the false registration."), *aff'd*, 233 F.2d 449 (2d Cir. 1956) ("We think that the District Court's . . . interpretation of 15 U.S.C.A. 1120 was correct."). Accordingly, Defendants have stated a claim for injuries and damages under Section 38 resulting

1   from Plaintiff's fraudulent procurement of the Registrations, and Plaintiff's Motion
2   should thus be denied.

3        **C.**    **The Allegations Of Defendants' Fifth And Sixth Counterclaims (the**
4             **"Unfair Competition Counterclaims") State A Claim And Are**
5             **Sufficient To Confer Standing.**

6        Plaintiff wrongfully contends that Defendants' Unfair Competition
7   Counterclaims should be dismissed as preempted by the Lanham Act and for lack of
8   standing. *See* Motion at pp. 15-16. In arguing that the Unfair Competition
9   Counterclaims are preempted, Plaintiff incorrectly contends that "state laws to cancel
10  or invalidate a Federally Registered Trademark are preempted under Section 39(b) of
11  the Lanham Act . . ." *Id.* at p. 15. Plaintiff then inexplicably and erroneously asserts
12  that Defendants have sought cancellation of the Registrations through the Unfair
13  Competition Counterclaims, causing such counterclaims to be preempted. *Id.* at pp.
14  15-16.

15       Defendants agree that state laws or agency orders requiring cancellation,
16  invalidation or alteration of a federally registered trademark are preempted by Section
17  39 of the Lanham Act. However, Defendants are seeking available remedies, as
18  opposed to such an order, under the California Business and Professions Code and the
19  common law of unfair competition, and such relief is not preempted by the Lanham
20  Act. Indeed, Plaintiff's lone support for the position that the Unfair Competition
21  Counterclaims are preempted – *Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d
22  1295 (9th Cir. 1998) – is inapt. *Blockbuster Videos* dealt with the narrow issue of
23  whether section 1121(b) of the Lanham Act preempted a municipality's zoning
24  authority to regulate signs for aesthetic purposes when those signs display registered
25  service marks.[1] *Blockbuster Video* does not apply to the present situation.

26

27  ────────────────
28  [1] If Plaintiff truly believed that the California Business and Professions Code §§
    17200, *et seq.* and doctrine of common law unfair competition are preempted by the
    Lanham Act, Defendants question why Plaintiff found it proper to bring such claims
    against Defendants in Counts 5 and 6 of the Complaint. *See* Complaint at ¶¶ 56-64.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    Moreover, the Unfair Competition Counterclaims are not duplicative of the
2  Lanham Act claims. The Lanham Act claims allege that Plaintiff fraudulently secured
3  the Registrations.    However, the Unfair Competition Counterclaims allege that
4  Plaintiff unlawfully and unfairly forced Defendants to cease their legitimate ongoing
5  business activities related to the advertising and sale of the Film. Thus, the facts and
6  theories underlying these sets of claims are distinct; Defendants do not seek
7  cancellation, invalidation or alteration of any federally registered mark through the
8  Unfair Competition Counterclaims. *See* Amended Counterclaim at ¶¶ 48-57. Thus, to
9  the extent that the Motion seeks dismissal of the Unfair Competition Counterclaims
10  on the basis of preemption, the Motion is baseless and must be denied.

11    Furthermore, the Unfair Competition Counterclaims sufficiently plead injury in
12  fact and monetary loss as a result of Plaintiff's unfair competition such that
13  Defendants have standing to maintain these counterclaims. Defendants have pled that,
14  as a direct result of Plaintiff's unfair competition, they have suffered actual losses in
15  the form of the cessation of Defendants' sales, promotion and distribution of the Film,
16  Defendants' loss of revenue from sequels of, and licensing rights in, the Film, and
17  Defendants' inability to recoup their expenses incurred in the production, promotion
18  and distribution of the Film. *See* Amended Counterclaim at ¶ 12. Defendants have
19  also pled that they have incurred considerable expenses and expended considerable
20  resources, including time, attorneys' fees and costs, investigating and defending
21  against the claims directly resulting from Plaintiff's unfair competition. *See id.* at ¶¶
22  14-15. These allegations confer upon Defendants standing to maintain the Unfair
23  Competition Counterclaims. *See So. Cal. Housing Rights Ctr. v. Los Feliz Towers*
24  *Homeowners Assoc.*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005) (holding that
25  standing under the California Unfair Business Practices Act exists where plaintiff
26  alleged actual injury and loss in the form of financial resources utilized to investigate
27  a claim brought by defendants and diversion of staff time in investigating that claim).
28  Thus, the Motion to dismiss the Unfair Competition Counterclaims must be denied.

**D.    Defendants' Seventh And Eleventh Affirmative Defenses Provide Plaintiff With Notice Of The Defenses And Should Not Be Stricken.**

Plaintiff's contention that Defendants' Seventh and Eleventh Affirmative Defenses of unclean hands and abandonment must be stricken for lack of standing and insufficient pleading is without merit. Motion at pp. 16-17. There is no requirement of "standing" for pleading affirmative defenses – Defendants are entitled to raise such defenses simply because Plaintiff has sued them. Indeed, Federal Rule of Civil Procedure 8(c) states that, "[i]n responding to a pleading, a party *must* affirmatively state any avoidance or affirmative defense . . . ." In the context of trademark litigation, as here, unclean hands and abandonment are examples of such affirmative defenses that must be pled or are otherwise considered waived. *See Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 830 (E.D. Va. 2001) ("Trademark misuse [or unclean hands] is not an independent cause of action, but is, instead, only an affirmative defense to a trademark infringement claim."); *Atlas Supply Co. v. Atlas Brake Shops, Inc*, 360 F.2d 16, 18 (6th Cir. 1966) ("Abandonment of a trademark is an affirmative defense which must be pleaded, otherwise it is deemed waived.").

Plaintiff contends, "In the absence of standing to state a cause of action for cancellation, however, Defendants' [sic] may not seek to prove fraud or abandonment of those same Registered Marks as a defense to infringement." Motion at p. 17. Plaintiff's proposition, however, is simply wrong. Indeed, the cases upon which Plaintiff relies for this ill-conceived notion, namely, *Cosmetically Yours, Inc. v. Clairol Inc.*, 424 F.2d 1385 (C.C.P.A. 1970), and *Gillette Co. v. "42" Prods. Ltd.*, 396 F.2d 1001 (C.C.P.A. 1968), are inapplicable to the instant case. Those cases involved opposition proceedings before the Trademark Trial and Appeal Board where the applicants attempted to prove abandonment of the opposers' trademarks being asserted against them. *See id.* In both cases, the Board refused such attempts on procedural and evidentiary grounds since, in the absence of a counterclaim for cancellation of an opposer's registration, applicants are not entitled to offer evidence

1    of abandonment of registered marks in response to opposition proceedings. *See id.*

2    Plainly, that is not the case here, and Defendants are entitled to proceed with their

3    affirmative defenses of unclean hands and abandonment.

4         In any event, even if there were a standing requirement for Defendants'

5    affirmative defenses of unclean hands and abandonment and it were somehow tied to

6    Defendants' ability to seek cancellation of the Registrations, Defendants have pled

7    and demonstrated that they have such ability. *See, supra*, at Sec. IV.A. Thus, even

8    under Plaintiff's own analysis, Defendants would have standing to maintain their

9    affirmative defenses of unclean hands and abandonment such that these affirmative

10   defenses should not be stricken.

11        In a final act of desperation, Plaintiff contends that Defendants' affirmative

12   defense of abandonment should be stricken because Defendants "have failed to allege

13   the requisite element of 'intent' to state the defense of abandonment." Motion at p.

14   17. However, there is no specific format required for pleading affirmative defenses,

15   and indeed, in some cases, merely pleading the name of the affirmative defense will

16   suffice. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (merely

17   pleading "contributory negligence" as an affirmative defense could suffice). Indeed,

18   all that is required under the Federal Rules of Civil Procedure is that Defendants'

19   pleading is sufficient to provide Plaintiff with fair notice of their affirmative defense

20   of abandonment such that Plaintiff would not be unfairly surprised at trial. *See* Fed.

21   R. Civ. P. 8; *see also Wyshak*, 607 F.2d at 827.

22        Abandonment is a specific defense governed by the Lanham Act, and

23   Defendants' pleading has given Plaintiff fair notice of the claim against it. Indeed,

24   notice was also given to Plaintiff through the Consolidated Petition to Cancel that

25   Defendant PMGI filed in the Cancellation Proceeding in the USPTO on September

26   12, 2008, which proceeding was then suspended at Plaintiff's request in order to

27   litigate that issue, *inter alia*, in this Court. *See supra*, at pp. 3-4. As such,

28   Defendants' affirmative defense of abandonment should not be stricken.

1    **V.    CONCLUSION**

2        Defendants' First Amended Counterclaim and Amended Answer and

3    Affirmative Defenses do not suffer from any pleading deficiencies warranting

4    dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or striking pursuant to Fed. R. Civ. P.

5    12(f).    In addition, because of the Cancellation Proceeding in the USPTO, which

6    similarly embodied the counterclaims and affirmative defenses now presented in

7    Defendants' First Amended Counterclaim and Amended Answer and Affirmative

8    Defenses, Plaintiff has had ample notice of such issues and, indeed, is the party that

9    argued in both venues that such issues be consolidated before this Court for the sake

10   of judicial economy, among other reasons.    Should this Court determine, however,

11   that any portion of Plaintiff's Motion has merit, then Defendants request leave to

12   amend to address any deficiencies identified by the Court in their First Amended

13   Counterclaim and Amended Answer and Affirmative Defenses.    *See* Fed. R. Civ. P.

14   15(a)(2) ("[t]he court should freely give leave [to amend] when justice so requires").

15

16   Dated:  March 23, 2009            KATTEN MUCHIN ROSENMAN LLP

17
                                       By:    s/Kristin L. Holland
18                                     Attorneys for Defendants

19                                     KATTEN MUCHIN ROSENMAN LLP

20
                                       By:    s/Floyd A. Mandell
21                                     Attorneys for Defendants

22

23                                     ROTHKEN LAW FIRM LLP

24                                     By:    s/Ira P. Rothken
                                       Attorneys for Defendants
25

26

27

28